## AFFIDAVIT

Your Affiant, Orlando A. Brown II, being duly sworn, deposes and states:

### I.     INTRODUCTION

1.     Your Affiant is a Special Agent with the Federal Bureau of Investigation, having been so employed since September of 2015.  During his time as a Special Agent, Affiant has participated in the investigation of criminal drug organizations, to include searches, surveillances and interviews of criminal subjects. Affiant has discussed various aspects of these criminal investigations with other Special Agents as well as local police department Officers and Detectives. Prior to becoming a Special Agent, Affiant was employed by JPMorgan Chase.  Your Affiant graduated in August 2008 from Widener University (Pennsylvania) with a Bachelor of Science in Business Administration.  In 2018, your Affiant graduated with a Masters Degree in Business Administration with a concentration in homeland security.

2.     Since becoming an FBI Agent, your affiant has become familiar with, and has participated in, normal methods of investigation, including, but not limited to, use of physical surveillance, witness interviews, search warrants, arrest warrants, debriefings and operational use of informants, pen registers, surveillance of undercover transactions, consensually monitored and recorded conversations and phone calls, the introduction of undercover officers, and reviews of recorded conversations. Additionally, your affiant has participated in investigations that utilized the interception of wire and electronic communications (Title III), and has monitored/minimized numerous calls during these investigations.  Through training, education and experience, your affiant has become familiar with the manner in which illegal drugs are transported, stored, and distributed and the methods of payment for such drugs.  Your affiant has received numerous hours in training from various federal, state, and local law enforcement agencies.

3. Based on your affiant's background, training, and experience, as previously detailed in this affidavit, your affiant knows:

   a. That narcotics traffickers must maintain a large amount of United States currency in order to finance their ongoing narcotic organization, and

   b. That it is common for drug traffickers to secrete contraband, proceeds of drug sales, financial instruments, precious metals, jewelry, and other items of value, and/or proceeds of drug transactions, records or evidence of drug transactions relating to transferring, secreting, or spending of large sums of money made from engaging in drug trafficking in secure locations on their persons, within their vehicles, or within or around their residences or businesses for ready access or to conceal them from law enforcement authorities.

   c. That drug traffickers use firearms in furtherance of their drug trafficking.

4. Your affiant has authored affidavits for search and arrest warrants, listened to intercepted phone calls, and has participated in the use of undercover operations for the purchase of illegal substances. Your affiant has participated in the execution of numerous controlled deliveries of narcotics. As a result of his law enforcement service, your affiant has gained a considerable amount of knowledge through both training and experience.

5. Materials searched for and recovered in search warrants have included various controlled substances, including cocaine, methamphetamine, and marijuana; drug paraphernalia such as scales, papers and drug packaging materials; firearms, books and records reflecting sales, the transfer or transportation of drugs and amounts of moneys owed for drugs; records reflecting the names, addresses, and telephone numbers of co-conspirators; sales receipts and other records reflecting the expenditure of moneys that are the proceeds from unlawful drug distribution; currency and money wrappers; computers and computer discs containing drug ledgers and records; and various valuable assets (i.e., real property, automobiles, precious metals, and precious gemstones) purchased with the proceeds of unlawful drug trafficking. Recovered

search warrant materials include evidence of drug violations, evidence of acquisition of drug trafficking proceeds and assets purchased with such proceeds, and evidence of assets used to facilitate drug trafficking violations and property involved in money laundering, all of which further aided the government in the identification and indictment of co-conspirators.

6.     Your affiant has interviewed numerous defendants involved in the use, manufacture, transportation, and illegal sale of controlled dangerous substances. During the course of these interviews, your affiant has inquired and learned how individuals involved in drug distribution schemes use and disburse the illegal proceeds generated due to the illegal sale of controlled dangerous substances, including but not limited to chemicals commonly utilized in the illegal manufacturing and distribution of methamphetamine, cocaine and heroin.  During the course of my training and interviews with various defendants, your affiant has learned how individuals involved in drug distribution schemes maintain records and conspire to deceive law enforcement, as well as, rival distributors of controlled dangerous substances.  Your affiant has learned how individuals that are involved in the distribution of controlled dangerous substances use firearms in furtherance of their trafficking and secret monies gained as a result of participation in illegal drug distribution networks.  The information contained in this affidavit is known personally and/or was learned from information received from other officers or agents and by reviewing reports and documents affiliated with this investigation.

7.     To date, your affiant's participation in drug trafficking investigations has resulted in both the successful prosecution of numerous individuals and the forfeiture to the United States Government of assets purchased with the proceeds from unlawful drug trafficking, assets used to facilitate drug violations and property involved in money laundering.

## II. PURPOSE OF AFFIDAVIT

8.      This case is being investigated by the Federal Bureau of Investigation (FBI) in Tulsa, Oklahoma, and the Tulsa County Sheriff's Office and is based on your affiant's personal participation in this investigation; reports made and/or provided to your affiant by other federal agents and law enforcement authorities; and information provided by confidential informants discussed in more detail below. The purpose of this affidavit is to support the forfeiture of drug proceeds and facilitating property seized from Rafiel Salinas-Flores.

9.      Civil asset forfeiture and criminal asset forfeiture are investigative tools utilized by federal law enforcement, including the FBI, to disgorge the fruits and instrumentalities of certain crimes from individuals who have profited illegally from criminal conduct. This disgorgement is designed to ensure that individuals do not profit from their criminal activity and to remove the tools of the crimes from circulation.

10.     Title 21 U.S. Code § 881 – Forfeitures, states, in part,

(a)     **Subject Property.** The following shall be subject to forfeiture to the United States and no property right shall exist in them:

(6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

11.     Based upon facts determined by the investigation, there is probable cause to believe the $25,000 is property furnished or intended to be furnished in exchange for controlled substances, is proceeds of such an exchange and/or is property used to facilitate the drug offenses.

12. The information contained in this affidavit is known personally and/or was learned from information received from other officers or agents and by reviewing reports and documents affiliated with this investigation.

### III. FEDERAL AND STATE CHARGES

13. On February 10, 2012, in a Federal Grand Jury for the Northern District of Oklahoma indicted Rafiel Salinas-Flores, a/k/a "Hugo," a/k/a Rafael Salinas-Flores," ("Salinas-Flores"), on drug conspiracies and possession of methamphetamine with intent to distribute.  Case No. 12-CR-041-JHP, *United States v. Rafiel Salinas-Flores, et al*, United States District Court for the Northern District of Oklahoma.

14. On May 18, 2012, Co-defendant Kevin Gonzalez Zetino entered a plea to methamphetamine conspiracy and was sentenced to 37 months.  On August 21, 2012, Co-defendant Saul Antonio Flores-Lopez was found guilty at jury trial of methamphetamine conspiracy and possession of methamphetamine with intent to distribute and was sentenced 121 months.  On December 11, 2013, the Tenth Circuit affirmed his conviction.

15. On January 9, 2017, in CF-2017-103, *State of Oklahoma v. Rafael Salinas-Flores, et al*, District Court in and for Tulsa County, Oklahoma, Salinas-Flores was charged with drug trafficking.  On April 18, 2017, Salinas-Flores pled guilty to methamphetamine drug trafficking charges, and acquiring proceeds from drug activity.  On approximately January 28, 2019, Salinas-Flores was released from incarceration on such State charges and is presently on supervised release.

### IV.  BACKGROUND

16. The Arroyo Drug Trafficking Organization (ADTO) was identified as a Tulsa-based drug distribution node with strong ties to other drug trafficking organizations in Oklahoma, Texas, Missouri, Kansas and Mexico. The ADTO was directed by Noel Rogelio Arroyo, a/k/a "Noe," who at the time resided in the Northern District of

Oklahoma. The ADTO's main source of income was derived from interstate drug trafficking, particularly crystal methamphetamine (ice) and marijuana. ADTO members resorted to weapons trafficking, extortion, robberies, assaults and murder in order to protect their drug territory, intimidate victim communities and finance their interstate drug trafficking operations. In October, 2010 the Federal Bureau of Investigation, along with members of the Tulsa County Sheriff's Office (TCSO) Drug Task Force opened a criminal investigation into the ADTO.

## V.  FACTS AND CIRCUMSTANCES

17. On or about January 10, 2012, a Tulsa County Sheriffs (TCSO) Drug Task Force Deputy received information from TCSO Confidential Informant (hereafter referred to as CI) regarding a Mexican male known as "Guey (pronounced "Way") who CI identified as a supplier of methamphetamine in the Tulsa, Oklahoma area. The CI advised that in order to purchase methamphetamine from `Guey', all one had to do was to call him on the telephone to arrange the transaction.

18. On January 10, 2012, the TCSO Drug Task Force utilized a Confidential Informant (CI) to make a controlled purchase of 15.1 grams of methamphetamine. This purchase was from an individual known as "Guey".

19. On January 11, 2012, the TCSO Drug Task Force utilized the CI to again purchase a quantity of methamphetamine from "Guey". The CI purchased approximately 28 grams of methamphetamine.

20. Following this purchase, officers arrested 'Guey' who was subsequently identified as Kevin Gonzales. Gonzales advised he has bought methamphetamine (referred to by its street name "ice") from a Hispanic male named "Hugo" for a long time. Gonzales said in order to purchase ice, he travels to a residence [1248 South Evanston Avenue] to meet Hugo. Hugo does not live at this residence, but keeps his supply of ice in a vehicle that is parked in front of the residence. Gonzales said when he picked up the ice, Hugo retrieved it from the vehicle parked at the residence and

when he did, he observed what he believed to be approximately two (2) pounds of ice under the back seat. Gonzales said Hugo always has a supply of ice available to distribute.

21.     TCSO DTF officers obtained a search warrant for 1248 South Evanston Avenue, Tulsa, Oklahoma, the residence where Gonzalez indicated he had seen two (2) pounds of methamphetamine in a vehicle. During the search, officers found in the house and garage indicia of drug distribution, and in a truck in the driveway they found large quantities of methamphetamine. Officers also found a Food Saver vacuum sealer, Food Saver bags compatible with the sealer, Ziplock bags, a strainer and a set of digital scales. In the garage, officers found a bucket of MSM, a cutting agent for methamphetamine.

22.     While the search warrant was being executed at 1248 South Evanston Avenue, Luis Herman Munoz and Saul Antonio Flores-Lopez arrived. Deputies took them into custody. TCSO DTF officers provided Munoz and Flores-Lopez with their rights per the Miranda Warning. They agreed to speak to officers without an attorney being present.

23.     Munoz advised that he has heard conversations about drugs and money between his roommate, Saul Antonio Flores-Lopez and Salinas-Flores. Munoz directed TCSO DTF officers to 3325 South 115 East Avenue, Tulsa, Oklahoma and identified it as the residence where Salinas-Flores lives.

24.     Flores-Lopez told TCSO DTF officers that he knows Rafiel keeps methamphetamine in the truck that he (Flores-Lopez) allows to be parked in front of the house where he lives. Flores-Lopez said that in exchange for allowing Rafiel to keep the truck at his house in his driveway, Rafiel pays the rent for Flores-Lopez and Munoz to stay at the house. Flores-Lopez said that Rafiel has been paying the rent for the three months prior to the search in exchange for allowing Rafiel to keep the truck in the driveway at the residence.

25.     Flores-Lopez told TCSO DTF officers that he has collected money for Rafiel at his residence on at least one occasion in the past from an individual. Flores-Lopez advised he believed the money was drug proceeds.

26.     Flores-Lopez said that Rafiel has told him that he keeps something illegal in the truck but he would not tell him what it was. Flores-Lopez said he agreed to this arrangement with Salinas-Flores because he has no money. Flores-Lopez said Rafiel is not employed.

27.     TCSO DTF officers ran a utility check on the residence, 3325 South 115 East Avenue, Tulsa, Oklahoma and the utilities were confirmed to be under the name Salinas-Flores.

28.     TCSO DTF officers went back to the jail and spoke to Kevin Gonzalez. Gonzalez again agreed to speak to TCSO DTF officers without an attorney present. Gonzalez said he works for Salinas-Flores selling methamphetamine that Salinas-Flores supplies. Gonzalez said that in exchange for selling the methamphetamine for Rafiel, Rafiel pays the rent for Gonzales' apartment at 7317 South 99 East Avenue, Apt. 1732, Tulsa, Oklahoma.

29.     TCSO DTF officers obtained a search warrant for 3325 South 115 East Avenue, Tulsa, Oklahoma and on January 13, 2012 executed the warrant. During the search, officers recovered a red notebook which contained notations the officers believed to be drug notations, and used shrink wrap covered in grease that based upon training and experience, is used during the transport of illegal drugs in an attempt to mask the odor of the narcotics. They also located an empty plastic bucket of MSM [Methyl Sulfonyl Methane], a known cutting agent for manufacture and cutting (filler) of methamphetamine and used by meth cooks and distributors. Officers also found plastic bags and a roll of vacuum seal bags believed to be used in the illegal trafficking operation. Officers also discovered $25,000 in US Currency in the south/central bedroom of the residence.

## CONCLUSION

30. Based on the evidence set forth in this affidavit, along with your affiant's training, experience, and knowledge of violations of the drug control laws of the United States, there is probable cause to believe that the $25,000 is property subject to forfeiture pursuant to 21 U.S.C. § 881 because it: (a) moneys or things of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical in violation of the drug control laws, or proceeds traceable to such an exchange; and/or (b) are firearms (as defined in section 921 of Title 18) used or intended to be used to facilitate the transportation, sale, receipt or possession, or concealment of controlled substances.

31. Furthermore, there is probable cause to believe that the $25,000 is subject to forfeiture under 18, U.S.C. § 981(a)(1)(C) because it is property constituting or derived from proceeds traceable to a "specified unlawful activity," that is, violation of the drug control laws of the United States.

32. Therefore, the $25,000 is subject to forfeiture pursuant to 21 U.S.C. §§ 881(a)(6) and (11) and/or 18 U.S.C. § 981(a)(1)(C).

Further, affiant sayeth not.

Orlando A. Brown II
Special Agent
Federal Bureau of Investigation

Subscribed and sworn before me this 22 day of February, 2019.

Notary Public, State of Oklahoma

(seal)